United States District
Southern District of
FILED

MAY 2 5 2000

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MAPLEX, S.A. DE C.V. | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-032 |
| | § | JURY TRIAL REQUESTED |
| CITY OF BROWNSVILLE, | § | |
| Defendant. | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR DISMISSAL

Plaintiff, Maplex S.A. De C.V. ("**Maplex**") files this response to Defendant's Motion for Dismissal, and would respectfully show unto the Court as follows:

1. A Motion to Dismiss under Fed. R. Civ. P. 12 (b)(6) is not appropriate unless the face of the plaintiff's pleading shows, beyond doubt, that the plaintiff cannot prove any set of facts that would entitle it to relief. See, Garrett v. Commonwealth Mtg. Co., 938 F.2d 591, 594 (5th Cir. 1991). A Motion to Dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges the plaintiff's right to any relief based on those facts. See, Crow v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). The issue is not whether the plaintiff will ultimately prevail but whether it is entitled to offer evidence to support its claims. See, Doe v. Hillsboro ISD, 81 F.3d 1395, 1401 (5th Cir. 1996).

2. The standard on a Fed. R. Civ. P. 12(b)(6) is so stringent that a Court will rarely encounter circumstances that justify granting such a motion. See, e.g., Mahone v. Addicks, Util. Dist. 836 F.2d 921, 926 (5th Cir. 1988). The Court may not decide disputed fact issues. The Court must assume all material facts contained in the complaint are true. See, Davis v. Monroe Cty. Bd. of Educ., 119 S.Ct. 1661, 1666 (1999). The Court must also indulge all inferences in favor of the Plaintiff. See, Doe v. Hillsboro ISD, 81 F.3d at 1401. The Court should dismiss

990699.990699/120198 01

under Fed. R. Civ. P. 12(b)(6) only if the Court can determine to a certainty that the plaintiff cannot prove any set of facts that would entitle it to relief under the allegations in its complaint. See, <u>Hishon v. King & Spalding</u>, 104 S.Ct. 2229, 2232 (1984). The standard is intended to be stringent and exacting because Fed. R. Civ. P. 12(b)(6) motions are strongly disfavored.

### I. Defendant is unable to claim governmental immunity.

3. In this case, the doctrine of sovereign or governmental immunity does not apply. Defendant claims that Plaintiff's state law claims for fraud, fraudulent inducement, misrepresentations, tortious interference with business relations, tortious interference with a contract, liable, slander and business disparagement are barred by the doctrine of sovereign or governmental immunity under the law of Texas. <u>See</u>, Defendant's Motion page 2. However, the City of Brownsville was participating in the private sector. Indeed, many of the complaints being made by Plaintiff in this lawsuit revolve around the fact that the City of Brownsville was acting as a private creditor and private landlord when it began damaging Plaintiff. Moreover, the City of Brownsville improperly used its governmental powers to harass and damage Plaintiff. For example, the City of Brownsville used its own police officers to prevent Plaintiff from reentering leased premises when the City had neither filed a forcible entry and detainer action nor obtained a Writ of Possession. This use of police force in a private situation was improper.

4. After Plaintiff had been unlawfully evicted from the leased premises, the Plaintiff leased a warehouse to begin storing its property. In an attempt to continue to harass and retaliate against Plaintiff, the City of Brownsville told Plaintiff's new landlord that the warehouse storing the materials had been improperly zoned, and that Plaintiff should not be allowed to keep its materials at the new warehouse. The City of Brownsville threatened the new landlord with violations if it did not evict the Plaintiff.

5.      The City of Brownsville next used its governmental powers to have the police department execute a search warrant and seize assets at Plaintiff's new location. The City of Brownsville seized at least two air-conditioning units that it knew belonged to Plaintiff. Rather than go to a judicial forum to determine ownership of these assets, the City of Brownsville used its governmental powers to improperly seize these assets.

6.      Defendant cites <u>Houston v. Southwest Concrete Constr., Inc.</u>, 835 S.W.2d 728 (Tex. App. -- Houston [14th Dist.] 1992, writ denied), for the proposition that many of Plaintiff's tort claims are barred by the doctrine of sovereign or governmental immunity under the laws of Texas. However, Defendant's case holds directly to the contrary and holds that the plaintiff was allowed to bring these claims. In <u>Southwest Concrete</u>, the plaintiff sued the City of Houston for tortious interference with a contract, negligence, breach of contract, breach of covenant of good faith and fair dealing, retaliation and harassment. <u>See</u>, <u>Id</u>. at 729. The Court explained that where a municipality undertakes activities which are not integral to its function as an arm of the State; those functions are known as "proprietary functions." <u>See</u>, <u>Id</u>. at 731.

7.      The sovereign immunity of the State does not protect a municipality from liability for actions taken in a proprietary capacity because such are undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public. <u>See</u>, <u>Id</u>. at 731. The Texas Tort Claims Act does not apply to those proprietary functions which a municipality chooses to undertake. <u>See</u>, <u>Id</u>. Therefore, a city will still be liable when an employee of a municipality commits a tortious act during his or her work for the City's proprietary functions. <u>See</u>, <u>Id</u>. **Moreover, to implement this policy, the Texas Supreme Court has mandated that the doctrine of municipal immunity is to be strictly construed against the municipalities.** <u>See</u>, <u>City of Gladewater v. Pike</u>, 727 S.W.2d 514, 519 (Tex. 1987). In <u>Southwest Concrete</u>, the Court held

that the City of Houston's activities as an overall administrator of a rehabilitation loan program constituted a proprietary function for which governmental immunity and the Texas Tort Claims Act did not apply. See, Id. at 732. The Southwest Concrete Court reasoned that ministerial acts by local governments that could easily be performed by private contractors are proprietary functions rather than government functions. See, Id. at 733.

8. In Abercrombie Interests, developers sued a city alleging fraud, negligent misrepresentation, constructive fraud, wrongful foreclosure, breach of fiduciary duty and breach of express and implied warranties. See, Josephine Abercrombie Interests, Inc. v. City of Houston, 830 S.W.2d 305 (Tex. App. -- Corpus Christi 1992, writ denied).[1] Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations. See, Id. at 308. When a municipality acts not in connection with duties imposed upon it under powers conferred to it as a legal agency of the State, or as the representative of the State sovereignty, its acts are proprietary, and it is liable for torts committed by its officers and agents performing them. See, Id. at 309. In order for a municipality to argue that a task is a governmental function, the task must be commanded by the State and must

---

[1] The developers alleged that the City induced them to purchase property by making a fraudulent promise to loan money for the property's development despite the city's knowledge that the loan violated HUD lending requirements. The developers also alleged that the City induced them to give the City a first lien position on the property with the promise that the City would subordinate its position as to any third party financing. The developers argued that when they arranged their third party financing, the City refused to subordinate its first lien position. Similarly to this case, the Abercrombie Interest Plaintiff had relied on the City's representations and was damaged as a result of the failure of the City to live up to its representations. See, Id.

The Abercrombie Interest Plaintiff argued that the primary purposes of the intended project were to create and maintain jobs for low and moderate-income residents of Houston and to stimulate economic development in the areas surrounding the property. The Plaintiff also argued that the loan of the funds was a proprietary function performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the City. See, Id. at 308. The Plaintiff explained that the City was not required to make the loans, and that it chose to do so, in its discretion, for the benefit of the inhabitants of the City. The Trial Court granted a summary judgment for the city. However, the Corpus Christi Court of Appeals reversed.

necessarily enjoin a function on the municipality. See, Id. Defendant has not established these elements in this matter.

9. In Herschbach, the Court listed factors that it must find in order to decide in favor of governmental immunity. See, Herschbach v. City of Corpus Christi, 883 S.W.2d 720 (Tex. App. -- Corpus Christi 1994, writ denied). The Herschbach court held that in order to find governmental immunity, it had to decide that (1) the calculation of the average monthly salary was an act enjoined upon the City as part of the State sovereignty, and (2) that the City exercised the function in the interest of the general public. The Herschbach Court stated that it must also strictly construe the doctrine of municipal immunity against the municipality. See, Id. at 731.

10. In Schuller, the Court held that slanderous remarks were not protected by official immunity. See, Schuller v. Swan, 911 S.W.2d 396, 399 (Tex. App. -- Corpus Christi 1995, no writ).[2] In this case, the City was trying to generate revenue for the municipality, not for the public as a whole. By obtaining a larger amount from the bankruptcy estate, the City was benefiting its own coffers. Moreover, the City represented that it would offer lower lease rates to the Plaintiff because the City would benefit by the Plaintiff's use of the City facilities. Specifically, if the company remained in Brownsville, the citizens of Brownsville would benefit by increased jobs, a better economy, and other factors. These were the reasons provided by the City for offering lower lease rates. All of these functions are proprietary functions.

11. In this case, the City of Brownsville was acting as a creditor in a bankruptcy estate sale. Again, this is a proprietary and not a governmental function. As a result of trying to recover

---

[2] The Schuller Court held that a city manager's public communications were made in the performance of a proprietary function for the City. The Court also held that the remarks were not unique to the city manager's job or were not uniquely different from the private sector in making such communications. Similarly, in this case, various City employees made statements that damaged Plaintiff's business. Indeed, Plaintiff's business did ultimately fail as a result of actions by Defendant's employees.

increased amounts from the bankruptcy estate, employees of the City of Brownsville made misrepresentations and committed other acts which damaged Plaintiff. Courts have reasoned that a municipality should not be relieved from liability where an individual or private corporation exercising the same powers for a purpose essentially private would be liable. Indeed, if a private citizen was a creditor at a bankruptcy sale and made fraudulent representations in order to entice a prospective purchaser to make a higher bid, this person would be liable for his or her conduct. Therefore, Plaintiff has established that Defendant cannot claim governmental immunity.

**II.     Dismissal is not appropriate because Plaintiff has provided a set of facts that would entitle it to relief in this matter.**

12.    Defendant is also arguing that dismissal is appropriate because Plaintiff cannot prove any set of facts that would entitle it to relief in this matter. However, the cases cited by Defendant hold to the contrary. Specifically, in Crow v. Henry, the Court reasoned that a dismissal cannot be upheld unless it appears beyond doubt that the plaintiff will not be entitled to recover under any set of facts that they could prove in support of their claim. See, Crow v. Henry, 43 F.3d 198 (5th Cir. 1995). The Crow Court reversed the District Court and held that the claims had been adequately pled. See, Id. at 207.

13.    In Hillsboro Independent School Dist., the Court held that the District Court needed to read the complaint *in pari materiae* so as to be able to review the complaint as a whole. See, John Doe v. Hillsboro Independent School Dist., 81 F.3d 1395, 1402 (5th Cir. 1996). The Hillsboro Independent School Dist. Court held that it could not dismiss the complaint because the plaintiff's pleadings were sufficient. In this case, Defendant tries to focus on specific parts of the complaint rather than the entire complaint. By reviewing the complaint as a whole, Defendant can understand why it is being sued. Moreover, the Hillsboro Independent School Dist. Court reasoned that in an early pleading stage, the plaintiff did not need to produce specific names and exact dates. See, Id. at

1404. The Court also stated that plaintiff's allegations were sufficient to merit discovery. See, Id. Plaintiff incorporates by reference its response to Defendant's Motion for More Definite Statement. As seen in this response, Plaintiff has adequately pleaded its actions and supporting facts. Defendant is free to investigate these claims in the discovery process.

### III.   This Court should not dismiss the Complaint for "Judicial Efficiency".

14.   Defendant argues that this Court should dismiss Plaintiff's complaint "in order to avoid conflicting opinions and to promote judicial efficiency." See Defendant's Motion page 3. Defendant cites no case law in support of this proposition. Moreover, Defendant has filed a motion to stay the federal proceeding based on this same argument. Neither of Defendant's arguments have merit.[3]

15.   The State Court proceeding was filed by City of Brownsville against Plaintiff and another entity regarding a lease, damage to property and environmental damages allegedly caused by Maplex. The federal lawsuit does concern *some* identical facts. However, the federal lawsuit encumbrances much broader facts than can be found in the state court proceeding.

16.   Specifically, the federal lawsuit stems from the fact that the City of Brownsville made representations that caused Plaintiff to purchase assets at a bankruptcy sale. Before the City of Brownsville became a landlord for Plaintiff, it was a creditor seeking to recover as much money as possible out of a bankruptcy estate. The City of Brownsville wanted Plaintiff to purchase these assets so that the City of Brownsville would be able to recoup the losses it was owed by the bankrupt party. The City told Plaintiff that the City wanted to offer perks (tax breaks, lower rents, etc.) so as to keep the business located in Brownsville so more jobs would be created and so that the local economy would benefit. As a result of the City of Brownsville's

---

[3] Maplex incorporates by reference its Response to Defendant's Motion to Stay.

...

representations, Maplex was the highest bidder at the bankruptcy estate sale. The fraud and misrepresentations will be established, in part, by the fact that the City of Brownsville refused to offer the lease rates it had previously represented it would offer. However, even after the lease had ended, the City of Brownsville continued to harass and damage Plaintiff.

17. Defendant knew that Plaintiff would file suit in Federal Court. As a result of this, the City of Brownsville filed a lawsuit in the State Court. Maplex removed the proceeding to the Federal Court. Because the City of Brownsville had added a Texas resident, the cause was remanded back to the State Court. These facts show the City of Brownsville's intentional acts of trying to keep this proceeding out of Federal Court. Because Plaintiff has established jurisdiction and venue, this Court can adjudicate Plaintiff's claims against the City of Brownsville.

### IV. This Court should not dismiss Plaintiff's § 1983 claims.

18. Defendant's cited authority in support of its proposition for the dismissal of the Plaintiff's section 1983 at seq. claims does not support Defendant's position. In <u>Scott v. United Brotherhood</u> and <u>Leffall v. Dallas Independent School Dist.</u>, both cases involved a suit against a governmental entity for damages caused by a **citizen** as opposed to a state actor. In this case, Plaintiff's damages were not caused by another citizen, but rather caused by employees of the municipality. Moreover, in <u>Sanders</u>, the Fifth Circuit Court of Appeals allowed Section 1983 claims for false arrest, illegal detention and malicious prosecution. <u>See</u>, <u>Sanders v. English</u>, 950 F.2d 1152 (5th Cir. 1992).

19. In discovery, Plaintiff believes it will establish that employees of Defendant violated § 1983. Plaintiff believes that it will establish that Defendant interfered with its right to be in business. Defendant discriminated against Plaintiff by unfairly regulating and enforcing zoning

laws. Defendant also improperly used its police force in a private matter.[4] Rather than using the civil judicial process, Defendant also used its police force to seize assets that the City knew belonged to Plaintiff. Plaintiff believes that discovery will further illuminate the § 1983 violations.

### V.  Plaintiff can recover punitive damages if it establishes certain elements.

20. Defendant also claims that Plaintiff is unable to recover punitive damages against the City of Brownsville. Again, Defendant's own cited authority holds to the contrary. In the <u>City of LaPorte v. Barfield</u>, the Court held that a specific statutory provision prohibited punitive damages against the municipality. See, <u>City of LaPorte v. Barfield</u>, 898 S.W.2d 288 (Tex. 1995). Moreover, the United States Supreme Court has held that punitive damages might be awarded in appropriate circumstances in order to punish violations of constitutional rights. See, <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981).

21. In <u>Pike</u>, the Court held that exemplary damages may be recovered against a municipality if a plaintiff can show that there is an intentional, willful, or grossly negligent conduct which shows entire want of care to the plaintiff's rights and that such conduct can be impeded directly the governing body of the municipality. See, <u>City of Gladewater v. Pike</u>, 727 S.W.2d 514 (Tex. 1987). Moreover, "exemplary damages" are validly awarded against a municipal corporation if a plaintiff subsequently proves grossly negligent conduct of policy makers. See, <u>City of San Antonio v. Rodriguez</u>, 856 S.W.2d 552 (Tex. App. -- San Antonio 1993, writ granted, order withdrawn; denied). Because discovery has not yet been conducted, Plaintiff is uncertain whether it will be able establish these facts. However, it would be premature to dismiss punitive damages at this time.

---

[4] Rather than obtain a writ of possession, the City used its own police officers to detain Plaintiff's workers and prohibit them from reentering the leased property.

990699.990699/120198.01                                    9

## VI. Conclusion

22. Plaintiff does not believe that this Court can determine to a certainty that the Plaintiff cannot prove any set of facts that would entitle it to relief under the allegations in its complaint. Again, the standard on a Fed. R. Civ. P. 12(b)(6) is so stringent that a Court will rarely encounter circumstances that justify granting such a motion. Thus, Plaintiff requests that this Court deny Defendant's motion. In the alternative, if this Court grants the Motion to Dismiss, Maplex requests that the Court allow Plaintiff to amend its pleading so as to comply with the Court's order.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: *[signature]*

Eric Lipper
State Bar No. 12399000
Fed. ID. No. 11442
William P. Huttenbach
State Bar No. 24002330
Fed. ID. No. 21742
25th Floor, Bank of America
700 Louisiana
Houston, Texas 77002
TEL: 713/220-9181
FAX: 713/223-9319

OF COUNSEL:

HIRSCH & WESTHEIMER, P.C.

LEAD COUNSEL FOR MAPLEX, S.A. DE C.V.

## CERTIFICATE OF SERVICE

I hereby certify that on this 24 day of May, 2000, a true and correct copy of Plaintiff's Response to Defendant's Motion for Dismissal was forwarded by telecopier to the following counsel of record:

Dalby Fleming
Davidson & Troilo
7550 West IH-10, Suite 800
San Antonio, Texas 78229-5815
**Telecopier No. 210/349-0041**

J. Homer Garza
The Garza Law Firm, P.C.
1111 North Loop West, Suite 927
Houston, Texas 77008-4716
**Telecopier No. 713/880-9373**

_____
William P. Huttenbach