/3

United States District Court
Southern District of Texas
FILED

JUN 28 2000

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MAPLEX, S.A. DE C.V. | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-032 |
| | § | JURY TRIAL REQUESTED |
| CITY OF BROWNSVILLE, | § | |
|     Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, MAPLEX, S.A. DE C.V., hereinafter referred to as Plaintiff, complaining of CITY OF BROWNSVILLE, hereinafter referred to as Defendant, and for cause of action would respectfully show unto this Court as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Specifically, diversity jurisdiction exists because Plaintiff has sued to recover damages in excess of $100,000.00 and complete diversity exists between the parties. This Court also has jurisdiction under the doctrine of Alienage Jurisdiction, as Plaintiff is a foreign corporation. This Court also has jurisdiction under § 1983 *et seq.*, which is a Federal statute for various civil rights violations.

2.  Plaintiff, Maplex, S.A. De C.V., is a foreign corporation organized and existing in the Country of Mexico. Defendant is a city located in the State of Texas.

990699.990699/120247.01

3. Venue is proper in the Southern District of Texas because this is where Defendant has its principal place of business, where the relevant documents are kept, where Plaintiff purchased the assets from the bankruptcy sale and/or where Defendant's improper actions occurred.

4. Defendant, City of Brownsville, may be served with summons by serving the proper representative of the City of Brownsville. However, the City of Brownsville has appeared in this lawsuit and has been provided notice of this pleading through its counsel of record, Dalby Fleming, Davidson & Troilo, P.C., 7550 West IH-10, Suite 800, San Antonio, Texas 78229-5815.

## FACTS

5. For a period of time, Defendant leased premises to Eagle Coach Corp. ("Eagle"). Eagle's business deteriorated and it entered bankruptcy. When Eagle entered bankruptcy, it owed Defendant monies for unpaid rental payments. Plaintiff acquired Eagle's assets at the bankruptcy sale. One of the reasons that Plaintiff purchased the assets at the bankruptcy sale, was that the City of Brownsville assured Plaintiff that it would charge a low rent to lease these premises. Defendant also made other representations to Plaintiff to entice Plaintiff to bid on Eagle's assets at the bankruptcy sale. Specifically, Defendant's representatives told Plaintiff that the City of Brownsville wanted to keep the business located in Brownsville and did not want the assets purchased by a corporation and moved to another city in the valley. The City of Brownsville wanted to keep the jobs in the City of Brownsville as well as increase the commerce that would flow through the City of Brownsville as a result of the company staying in Brownsville. The City represented that it would offer other perks if Plaintiff bought the assets.

6. Defendant made other representations to entice Plaintiff into purchasing the assets. Plaintiff now believes that Defendant made these representations to cause Plaintiff to submit a higher bid for the assets at the bankruptcy sale. Because the City of Brownsville was the creditor of the bankruptcy estate, a larger bid for the assets would generate a large recovery for the City of Brownsville from the bankruptcy estate.

7. As a result of Defendant's representations, Plaintiff did submit a large bid for the bankruptcy assets and was awarded ownership of the assets. Plaintiff's bid for the assets at the bankruptcy sale greatly exceeded $100,000. After obtaining the assets, Plaintiff wanted to lease the premises so allow it to begin its business.

8. Consequently, Plaintiff and Defendant entered into a letter of agreement regarding the facility dated July 28, 1998. Pursuant to the terms of the letter of agreement, Plaintiff submitted a lump sum payment of $75,000.00 in consideration of the authorization to occupy the premises for the three-month period contemplated by the letter of agreement. Defendant agreed to this lease even though the terms were contrary to earlier representations.

9. Later, again contrary to earlier representations, Defendant tried to raise the monthly lease payments to $35,000.00 per month (Plaintiff's predecessor was paying $19,000.00 for the use of the premises). Rather than charging less than the previous amount, Defendant began charging almost double the amount.

10. After further negotiations proved unsuccessful, Plaintiff subsequently notified Defendant that it would vacate the premises and requested two months (a reasonable time) to vacate the premises. During this time, the City of Brownsville improperly used its governmental powers to harass and damage Plaintiff. For example, the City of Brownsville used its own police officers to prevent Plaintiff from reentering the leased premises when the City had neither filed a

forcible entry and detainer action nor obtained a Writ of Possession. This use of police force in a private situation was improper. This improper eviction resulted in Plaintiff losing possession of property (the leasehold) without due process of law.

11. Defendant's officials also harassed Plaintiff's representatives, improperly detained people working for Plaintiff. More specifically, on May 6, 1999, police officers detained Olga Diaz, searched her vehicle, took photographs of her possessions and interrogated her. After refusing to allow her to reenter the premises, the police officers allowed her to leave but began following her vehicle as she left the premises. The police officers followed her for approximately three miles from the property when the police officers pulled her over and requested that she return to the premises. After she accompanied the officers back to the property, the police officers spoke with other officers who told the officers on the scene to keep Ms. Diaz at the property. Ms. Diaz used her cellular telephone to call her attorney who, after a period of time, obtained the officers' permission to allow Ms. Diaz to leave the premises.

12. After Plaintiff had been unlawfully evicted from the leased premises, the Plaintiff leased a warehouse to begin storing its property. In an attempt to continue to harass and retaliate against Plaintiff, the City of Brownsville told Plaintiff's new landlord that the warehouse storing the materials had been improperly zoned, and that Plaintiff should not be allowed to keep its materials at the new warehouse. The City of Brownsville threatened the new landlord with violations if it did not evict the Plaintiff. This act again interfered with Plaintiff's property right in the leased premises.

13. The City of Brownsville next used its governmental powers to have the police department execute a search warrant and seize assets at Plaintiff's new location. The City of Brownsville seized at least two air-conditioning units that it knew belonged to Plaintiff. The

City knew that the air conditioning units belonged to the Plaintiff because it knew what assets were being sold at the foreclosure sale. The serial numbers of the units sold at the bankruptcy sale matched the serial numbers of the units seized by the search warrant. Rather than go to a judicial forum to determine ownership of these assets, the City used its governmental powers to improperly seize these assets. The City also performed other improper acts to damage Plaintiff.

14.     Plaintiff will show this Court that the City of Brownsville induced Plaintiff to purchase the assets of Eagle for several reasons. Indeed, but for Defendant's representations, Plaintiff would never have purchased the assets of Eagle. By promising lower rental rates and additional perks, the City wanted to increase Plaintiff's bid to purchase the assets, which would increase the amount of money that the City could obtain from the bankruptcy estate.

15.     Plaintiff's claims against Defendant include breach of contract, fraud, fraudulent inducement, misrepresentation, tortuous interference with business relations, tortuous interference with a contract, libel, slander and business disparagement. Plaintiff also sues under §1983 et seq. for various civil rights violations, including depriving Plaintiff of its liberty rights by improper detention, depriving Plaintiff of its property rights without due process of law, the right to be in business and discriminatory enforcement of zoning laws.

16.     Plaintiff seeks to recover its lost profits, damage to its representation in the community, loss of business opportunities, monies it paid to purchase the assets at the bankruptcy sale, all costs and expenses associated with the business it purchased in the bankruptcy estate, attorneys' fees, pre-judgment and post-judgment interest, and Court costs within the jurisdictional limits of this Court. These amounts greatly exceed $100,000. Specifically, Plaintiff bid well over $100,000.00 to acquire Eagle's assets at the bankruptcy sale.

17.     Plaintiff also seeks punitive damages in the amount of $3,000,000.00.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer all said allegations and that upon final hearing, Plaintiff receives the following relief:

(a) Economic damages in the amount of at least $1,000,000.00;

(b) Punitive damages in the amount of at least $3,000,000.00;

(c) Additional compensatory damages as shown to this Court;

(d) Pre-judgment interest;

(e) Post-judgment interest;

(f) Attorneys' fees, experts' fees, Court costs and expenses incurred herein; and

(g) Any such additional relief as this Court deems just.

## JURY DEMAND

18. Plaintiff demands a trial by jury of all issues of fact in this action.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: /s/ Will Hutt

Eric Lipper
State Bar No. 12399000
Fed. ID. No. 11442
William P. Huttenbach
State Bar No. 24002330
Fed. ID. No. 21742
25th Floor, Bank of America
700 Louisiana
Houston, Texas 77002
TEL: 713/220-9181
FAX: 713/223-9319

LEAD COUNSEL FOR PLAINTIFF, MAPLEX, S.A. DE C.V.

OF COUNSEL:

HIRSCH & WESTHEIMER, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2000, a true and correct copy of Plaintiff's First Amended Original Complaint was forwarded by hand delivery or telecopier to the following counsel of record:

Dalby Fleming
Davidson & Troilo
7550 West IH-10, Suite 800
San Antonio, Texas 78229-5815
**Telecopier No. 210/349-0041**


J. Homer Garza
The Garza Law Firm, P.C.
1111 North Loop West, Suite 927
Houston, Texas 77008-4716
**Telecopier No. 713/880-9373**

_____
William P. Huttenbach