United States District Court
Southern District of Texas
FILED

SEP 1 4 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MAPLEX, S.A., DE C.V. | § § § | |
| VS. | § § | CIVIL ACTION NO. B-00-032 |
| CITY OF BROWNSVILLE | § § § | (JURY TRIAL REQUESTED |

**DEFENDANT CITY OF BROWNSVILLE'S MOTION
FOR SUMMARY JUDGMENT AND FOR ATTORNEY FEES
PURSUANT TO 42 U.S.C. § 1988 AND FOR SANCTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **CITY OF BROWNSVILLE**, Defendant herein and files this its Motion to For Summary Judgment Pursuant to FRCP 56. Defendant, The City of Brownsville would also request that in the event that summary judgement is granted, that this court award it attorney fees and costs as a prevailing party pursuant to 42 USC §1988 and also as sanctions pursuant to FRCP 11. In support of this Motion, Defendants would respectfully show unto this Honorable Court the following;

1) Defendant The City of Brownsville moves for summary judgement pursuant to FRCP 56 because there are no material issues of fact and Defendants are entitled to judgement as a matter of law.

2) The City of Brownsville would offer the following exhibits in support of its motion for summary judgement. This evidence is attached and incorporated by reference into this motion as Exhibits A through D respectively;

A) The letter agreement dated July 28, 1999, between Brownsville and Maplex attached as Exhibits A and incorporated by reference herein,

1

B)  The deposition of Julio Garcia., Maplex SA de CV corporate representative attached as Exhibit B and incorporated by reference herein,

C)  The deposition of Osvaldo Verastegui with attachments attached as Exhibit C and incorporated by reference herein,

D)  The deposition of Olga Diaz. with attachments attached as Exhibit D and incorporated by reference herein.

E)  The trial court's letter date August 9, 2001, is attached as Exhibit E.

## PLAINTIFFS ALLEGATIONS

3) The facts set forth in this motion are taken from the Plaintiff's petition and from the depositions of their corporate representatives. Defendant Brownsville also offers the depositions of Osvaldo Verastegui and Olga Diaz, the two Maplex employees who Plaintiff alleges were wrongfully stopped and detained by Brownsville Police. These facts are not necessarily stipulated to by Brownsville but will be, for the sake of this summary judgment only, be assume to be true and correct. Maplex SA de CV is Mexican corporation which has brought suit against the City of Brownsville, Texas under 42 U.S.C. § 1983 claiming its civil rights have been violated. The plaintiffs claim in their complaint that unnamed employees of the City of Brownsville induced Maplex SA de CV to bid on assets at a bankruptcy sale. The plaintiffs also allege that on July 28, 1998, Maplex entered into an agreement with Brownsville regarding use of certain commercial real estate located at Brownsville's Airport, "the premises". Maplex SA de CV essentially claims that based on Brownsville representations that it moved onto the premises and commenced a manufacturing operation of buses and bus parts there. Maplex SA de CV alleges that Brownsville later attempted to raise the rent, contrary to both this written agreement and to verbal representations. Maplex claims that after further lease negotiations proved unsuccessful, that it requested two additional months from the City of Brownsville to vacate the premises. Maplex

2

claims that during this time that the City of Brownsville used its police powers to harass and damage Maplex, to seize Maplex employees, to enter its leased premises and to prevent Maplex from reentering the premises which it had leased to conduct repairs. Maplex has brought suit against the City of Brownsville pursuant to 42 U.S.C. §1983 for depriving Maplex SA de CV of its liberty interests, by improper detention of Maplex Employees, by depriving Maplex of its property rights without due process of law, and the right to be in business, and also for discriminatory enforcement of zoning laws. The plaintiff Maplex SA de CV is the only plaintiff in this suit. Furthermore, Maplex SA de CV has failed to file suit against any individual defendants. Maplex has filed suit only against the City of Brownsville. Maplex SA de CV also claims that Brownsville committed various intentional torts for which it seeks redress, specifically; fraud, fraudulent inducement, misrepresentation, tortuous interference with business relations, tortuous interference with a contract, libel, slander, and business disparagement.

## GROUNDS FOR SUMMARY JUDGMENT

4) Defendant Brownsville is entitled to judgment because there is no material issue of fact and Defendant is entitled to judgment as a matter of law. Defendants specifically moves for summary judgment on the following grounds;

    A)    Maplex SA de C.V. lacks standing and any judicial interest and/or is estopped from seeking to enforce any right arising from the lease agreement of July 28, 1998, because Maplex claims that Julio Garcia lacked the capacity to contract for Maplex on the date of execution of the agreement.

    B)    Maplex lacks standing and lacks any judicial interest to sue to enforce a violation of Eagle Motor Coach Corporation rights since it has represented that Eagle, not

3

Maplex was conducting manufacturing operations on the premises made the subject matter of this suit.

C) Maplex SA de C.V. lacks standing and lacks a judicial interest in suing for a violation of the civil rights of Julio Garcia, Osvaldo Verastegui and Olga Diaz since Maplex was never their employer.

D) Maplex SA de C.V. lacks standing and judicial interest to sue for any controversy relating to Brownsville entering the leased premises on May 6, 1999, because that premises was voluntarily abandoned by Eagle Motor Coach Corp. on May 5, 1999.

E) The Texas Tort Claims Act bars all of Plaintiffs claims for intentional tort pursuant to Tx. Civ. Prac. & Rem. Code § 101.057.

F) The letter agreement of July 28, 1998, was an unambiguous contract and the court should not consider extrinsic evidence offered to contradict its terms.

G) Brownsville did not breach the July 28, 1998, agreement with Maplex because Maplex only had the right to occupy the premises from July 28, 1998, until October 31, 1998 and the premises was occupied from July 28, 1998 until May 5, 1999.

## SUMMARY JUDGEMENT FACTS

6) The following facts are taken from the depositions of Maplex corporate representative Julio Garcia and will for the sake of this summary judgement only be taken as true summary judgement facts.

7) The basis of most of plaintiffs claims flow from the July 28,1998, agreement entered into between the City of Brownsville and Maplex SA de CV(Ex. A). The agreement was signed by Julio Garcia, an individual who held himself out as President and General Director of Maplex SA de CV(Ex.A). The agreement relates to a potential lease of commercial property at Brownsville's

4

airport; (hereafter referred to as "the premises") (Exhibit A). The "agreement" recites that since Maplex had an immediate need for "the premises" and had expressed an interest in negotiating a lease of "the premises", Brownsville would permit Maplex to occupy the premises for a three (3) month period, from July 28, 1998, until October 1, 1998. (Exhibit A) "The agreement" made clear that the purpose of this provision was to permit Maplex SA de CV the opportunity to occupy the premises for three months during which time Maplex SA de CV could commence manufacturing operations of buses and bus parts while simultaneously negotiating a written long term lease of the premises with Brownsville[1]. (Ex A). In exchange for the use of the premises for the three month period from July 28, 1998, to October 1, 1998, Maplex SA de CV agreed to pay Brownsville a lump sum of 75,000.00 prior to August 1 1998. (Ex A). The agreement of July 28th provided a specific ending date by which Maplex agreed to vacate the premises in the event that no lease was able to be negotiated. (Exhibit A). The agreement provided that if Brownsville and Maplex were unable to enter into a lease by October 1, 1998 than the agreement would terminate unless extended by an additional mutual written agreement of the parties. (Exhibit A). In the event no lease was able to be negotiated, Maplex promised to vacate the premises no later than October 31, 1998. (Exhibit A). The agreement also recited that in the event that a lease could not be negotiated and Maplex was

---

[1] Regardless of Maplex's professed intent to manufacture buses and bus parts, the fact is that not a single bus was manufactured on "the premises" during its ten months of manufacturing operations. (Ex. B p 118 Ln 14 to 25) (Ex. C p. 71, Ln 22, p. 72 Ln 3) Agents Osvaldo Verastegui, the Eagle employee in charge of commercialization and manufacturing testified he never even saw a purchase order for a single bus. (Ex. C. p. 73 Ln 8 to Ln 20, p. 65 Ln 8 to Ln 10) Verastegui could not identify the name of a single customer who purchased buses or bus parts. (Ex. C p. 17 Ln 22, p. 18 Ln 4) Verastegui was not aware of the existence of a single contract for the purchase of buses or bus parts. (Ex. C p. 17, Ln 12 to Ln 24) Julio Garcia, Maplex Corporate Representative could not testify how many kinds of bus parts were produced in the Eagle Facility. (Ex. B p. 116 Ln 23 to Ln 25). Garcia admitted that during the entire ten months of operation that he only bought one motor for a bus (p. 118 Ln 8 to 11). Maplex's failure to manufacturer buses or bus parts was likely related to the fact that neither Julio Garcia a Osvaldo Verastegui had any previous background in manufacturing anything much less buses, bus parts or machinery. Julio Garcia testified that his prior job in Mexico involved carrying around "sugar" for his father. (Ex. B Ln 13 to Ln 21). Curiously, Osvaldo Verasteguis background in Mexico before he ran the Maplex bus manufacturing operation also involved buying and selling "sugar". (Ex. C. p. 70 Ln 16 p. 71 Ln 4). Maplex executives also testified to other unusual business practices for corporate executives. For example, Garcia admitted to keeping his money in a safe in a rental house in Mexico as opposed to a bank because he thought banks would steal his money (Ex. C, p.46, Ln. 5 to Ln 24)

5

somehow unable to complete moving out of the premises by October 31, 1998, than Brownsville would agree to *consider* such additional time as necessary for Maplex *to complete its vacating of the premises* during which time Brownsville would charge Maplex the sum of $25,000.00 per month(Ex. A).

8) Maplex SA de CV has brought suit claiming its constitutional rights were violated because Brownsville allegedly breached its agreement, harassed its business operations on the premises and seized its employees and equipment. There are three interesting summary judgement facts which must be understood before any discussion of the legal issues. First, the agreement which Brownsville signed was with Julio Garcia which he signed as "President and General Director", Maplex (Ex. A). However, Garcia who was produced as Maplex Corporate representative claims that he was never an officer, director or shareholder of that corporation and disavows that he possessed any authority to act for or bind Maplex at that time(Ex.B p. 22, Ln. 23, p.24, p.35, Ln 18 t0 22) (Ex. B, p.71, Ln 7 to p. 72 Ln 8). Second, the summary judgement evidence facts establish that the corporation which commenced business operations on the premises was not Maplex SA de CV, a Mexican Corporation which did not do business in the United States, but rather Eagle Coach Manufacturing Company, an American Corporation which has never joined as a plaintiff in this lawsuit. While Julio Garcia has never been an employee, officer or director of Maplex, he is the president of Eagle Coach Manufacturing Company(Ex. B, p. 32, Ln.7 to 13). Third, Maplex SA de CV claim that its employees rights were violated is also false. The summary judgement evidence establishes that the employees at the facility, Julio Garcia, Osvaldo Verastegui, and Olga Diaz were all employees of Eagle Coach Motor Corporation or Julio Garcia personally, and not Maplex SA de CV. It is unfathomable that a corporation may make any good faith argument how it can sue and claim damages for intentional torts or violation of constitutional rights of some other corporation of

6

which it is a mere 20% shareholder. Maplex may also not sue to enforce a right allegedly violated or some other corporation's employees. The summary judgement evidence establishing each of these points is set forth as follows;

9) The agreement between Brownsville and Maplex SA de CV was signed by Julio Garcia as President and General Director of Maplex (Ex.A). Garcia was produced as the corporate representative of Maplex SA de CV. Garcia conceded that he has never been a shareholder, officer, or director of Maplex SA de CV(Ex. B, p. 22, Ln. 23). Garcia also admitted that he had never been an employee of Maplex (Ex. B, p.24). Garcia admitted that he had no authority at all to contract for or bind Maplex SA de CV on July 28, 1998, the date the agreement was signed with Brownsville (Ex. B, p. 35, Ln. 20 to 22) (Ex. B, Ln. 7 to p.72, Ln 8). Garcia claimed that his sister was the owner of Maplex SA de CV. and that the only reason he was testifying as Maplex SA de CV corporate representative was that he had a power of attorney from his sister to act for the company (Ex. B, p.22, Ln. 14 to 15). However, Garcia very clearly admitted that at the time the he signed the agreement with Brownsville that not only was he not an officer or director of Maplex, but lacked any authority at all to bind that company to anything(Ex. B, p.35, Ln. 20 to 22). It is clear that Garcia knew he was signing something he had no authority to sign as the words Director in English and Spanish are the same and the words President and Presidente differ by one letter (Ex. B, p.72, Ln.7 to Ln 8). Maplex is therefore on one hand suing to enforce a leasehold interest, but on the other hand disavowing that Julio Garcia had the authority to sign the lease on its behalf.

10) Garcia next testified that Maplex SA de CV, the corporation which Brownsville originally believed was attempting to manufacture buses on the premises, was apparently never really operating there at all. Garcia admitted that while he was neither an employee, officer or director of Maplex, that he was actually the president and largest shareholder of a different

7

corporation named Eagle Coach Motor Corporation which was formed for the specific purpose of manufacturing buses and bus parts on the premises in Brownsville (Ex. B, p.31, Ln.20, 22). Garcia also testified that he and Maplex and Eagle Coach De Mexico SA de CV were shareholders in Eagle Motor Coach Corporation (Ex.B, p.32, Ln. 7 to 17). Garcia testified that he personally owned 60% of the shares of Eagle while Maplex only owned 20% (Ex. B, p.112, Ln.23, p.13, Ln. 23). Garcia admitted that the two employees, Osvaldo Verastegui and Olga Diaz who Maplex has alleged in this lawsuit were stopped and seized by Brownsville police were actually employees of Eagle Coach Manufacturing Co. not of Maplex SA de CV. Garcia testified that when he was not on the premises, that the person in charge of production was Osvaldo Verastegui (Ex. B, p.75, Ln.23 to p.76, Ln. 7). Verastegui testified in his deposition that he had never been employed by Maplex. Verastegui claimed that he was an employee of Eagle Coach Motor Corporation (Ex. C, p.11, Ln. 2 to 11). Verastegui admitted that it was Eagle and not Maplex which moved into the facility for the purpose of manufacturing buses and bus parts (Ex. C, p. 14, Ln. 6 to 11). Olga Diaz, the other employee who plaintiff claims was wrongfully seized was also deposed. Ms. Diaz testified that she had never been employed by Maplex (Ex. D, p.5, Ln 12 to 21). Diaz admitted that she worked for either Eagle Coach Motor Corporation or Julio Garcia personally and that they were one and the same (Ex.D, p.5, Ln. 12 to 21). Garcia admitted that Maplex SA de CV never did business in the United States other than purchase the assets of another corporation named Eagle at a bankruptcy sale. Garcia admitted that Maplex may not even be authorized to do business in Texas.

11) Maplex has alleged as a basis for its civil rights claim against Brownsville, that it had a leasehold interest in the premises which Brownsville wrongfully denied through use of its police powers. However, the undisputed summary judgement facts again show otherwise. First, Julio Garcia, Maplex own corporate representative conceded that at the time that he signed the

8

"agreement" that he lacked the capacity to contract for Maplex SA de CV (Ex.B, p.35, Ln. 20 to 22). Garcia was not an employee, officer or director of Maplex and admittedly lacked any authority to act for or bind the corporation on July 28, 1999 (Ex.B, p.35, Ln. 20 to 22). Therefore, Maplex claims that they are suing to enforce a constitutional right arising from a leasehold interest are inconsistent with their admissions that Garcia lacked the authority to bind or act for Maplex at the time the lease was executed (Ex.B, p.71, Ln.1, p. 78, Ln.8).

12) Maplex has sued claiming that they were forced to abandon the premises in violation of their leasehold interest. However, the summary judgement evidence establishes that Maplex position in this case is that they never signed any lease agreement because Garcia lacked the capacity to contract on their behalf on July 28, 1999 (Ex.B, p.35, Ln.20 to 23). Furthermore, premises was, according to Maplex's testimony, occupied by a different corporation; Eagle Coach Manufacturing Corporation. Garcia's own correspondence on behalf of Eagle establishes that the corporation which was corresponding to and from Brownsville regarding the lease of the premises was Eagle Coach, not Maplex (Ex. C, Ex. 4).

13) In addition, the summary judgement evidence establishes that Eagle Coach Manufacturing Company voluntarily abandoned the premises after they were unable to reach a lease agreement with the City of Brownsville (Ex. D, Depo. Exhibit 4). The summary judgement evidence establishes that Eagle had to move because they simply could not afford the rent (Ex. D, p.47, Ln. 9 to Ln.15). Olga Diaz testified that Eagle's overhead and expenses was a minimum of 35,000 per month (Ex. D, p.47, Ln. 19). Diaz testified that during its entire operation, Eagle Motor Coach Corporation sold only 10,000 per month in parts and was therefore operating at a 25,000 per month deficit (Ex. D, p.70, Ln.4 to Ln.15). Garcia admitted in his deposition that after the letter agreement, Maplex was never able to negotiate any subsequent lease with the City of Brownsville. (Exhibit

9

B p. 89 L13 to L20) Garcia admitted that even though the July 28, 1998, agreement required him to vacate the premises by October 31, 1998, that he did not abandon the premises until May 6, 1999. Garcia admitted stayed in the premises without a lease or agreement with Brownsville. (Exhibit B. p. 91, L.9 to L.12) Garcia admitted that he was never able to reach an agreement, contract or lease with Brownsville at any time. (Exhibit B p 89 13 to L 20). Olga Diaz testified that Maplex SA de CV alleges in their pleadings that they requested two months to abandon the premises and that during this time period, Brownsville harassed them in various ways in violation of their constitutional rights. Two months from October 31, 1998 the ending date of the preliminary agreement is December 31, 1998. However Garcia admitted that despite the fact that he had no agreement with Brownsville to stay on the property that *they did not begin to vacate the premises until February 1999* (Ex. B, p. 89, Ln. 13 to 20). At any rate, Garcia conceded in his deposition that the reason he moved out of the facility was that he simply could not come to an agreement with Brownsville regarding the rent. (Ex. B, p. 89, Ln. 13 to 17). Olga Diaz, the employee of Eagle Coach Motor Corporation confirmed in her deposition that in February or March of 1999 that she attended a meeting with the city regarding the rent. Diaz testified that the purpose of the meeting was to try to convince the City of Brownsville to lower the rent. ( Ex. D, p.46, Ln. 11 to 13). Diaz admitted that there may have been some conversations at that time that they could not afford the rent and might have to move elsewhere (Ex. D, p. 47, Ln. 9 to 15). Garcia testified that almost immediately after this meeting that Eagle hired people and began to start moving out of the premises. Diaz conceded that the decision to move out was Julio Garcia's decision (Ex. D, p. 48, Ln. 6 to 8). Olga Diaz admitted in her deposition that on May 5th 1999 she advised Brownsville by letter that Eagle Motor Coach Corporation had completed the move out of the leased property and attached to that letter the key to the main building (Ex. D, p. 79, Ln. 8 to 11). Plaintiff Maplex in their petition

10

claim that on May 6th 1999 Brownsville police entered the premises, took control of the building, and seized Olga Diaz and Osvaldo Verastegui. However, the summary judgment evidence establishes that Eagle Motor Coach Corporation and not Maplex SA de CV were the employers of both Verastegui and Diaz. Furthermore, neither Verastegui, Diaz, or Eagle Motor Coach Corporation has ever been named in this suit. The summary judgment evidence clearly establishes that Eagle Motor Coach Corporation voluntarily abandoned the premises and turned it over to Brownsville on May 5,1999 (Ex. D, p. 79, Ln.8 to 11, depo ex.5). Maplex claim that its civil rights were violated because Brownsville police used its powers to seize the building and its contents on May 6, 1999, is again frivolous. It is difficult to conceive of any argument which would give Maplex SA de CV any kind of constitutional right in Brownsville's premises under these summary judgement facts.

## ARGUMENTS AND AUTHORITIES

14) **Plaintiff Maplex SA de CV lacks standing or Judicable interest to assert any claims made in this suit.**

Serious issues of standing preclude Maplex ability to sue Brownsville for any cause of action filed here. Maplex does not have standing to assert a claim for an alleged violation of Eagle's civil rights just because it happens to own 20% of Eagle's stock *Searcy v. Houston Lighting & Power Co.*.907 F.2d 562,, (C.A.5 (Tex.) 1990). The Fifth Circuit has made clear that "neither officers nor stockholders ... can maintain an action to redress an injury to the corporation even though the value of their stock is impaired as a result of the injury."*Bellows v. Amoco Oil Co.* 118 F.3d 268, 277, (C.A.5 (Tex.) 1997) citing *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir.1981). See also *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir.1968). The law is clear that a stockholder cannot maintain an action under the Civil Rights Act for damages suffered by a

11

corporation in which he owns shares. ***Smith v. Martin***, 542 F.2d 688, 690 (6th Cir. 1976), cert. denied, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977), citing ***Erlich v. Glasner***, 418 F.2d 226 (9th Cir. 1969) (involving a §1983 claim for damages to a corporation). ***Des Vergnes v. Seekonk Water Dist.***, 601 F.2d 9, 16 (1st Cir.1979), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981) (no standing for president and sole shareholder in section 1981 action to redress defendant's breach of duty to corporation.).

Maplex may also not sue for an alleged violation of Olga Diaz and Osvaldo Veristigi's personal constitutional rights. Maplex has alleged that its rights were violated by the fact that Diaz and Veristigi were stopped in her private automobile while traveling on a public roadway. First, since neither Diaz nor Veristigi were employed by Maplex, it is clear that Maplex has no standing to claim its rights were violated. Second, Mrs. Diaz and Mr. Veristigi's rights under the 4th amendment are personal rights which cannot be asserted vicariously. ***Rakas vs Illinois*** 439 US 128, 133. 134, . 99 SCT 4212 425-426 (1978). ***San Jacinto Saveings and Load vs. Kacal*** 928 F2d 697 (5th Cir 1991). Even assuring a corporate employer could bring suit for a violation of the constitutional rights of its employees. Maplex was never the employer of Julio Garcia Olga Diaz or Osvaldo Verastegui. Therefore, taking their testimony as true for purpose of this Motion for Summary Judgment. Maplex SA de CV lacks standing and/or judicable interest to assert any of the claims which it has attempted to claim here.

There is also another standing issue which operates to defeat Maplex claims that it purchased the air conditioning equipment at the bankruptcy sale in reliance of promises or assurance by the City of Brownsville. Maplex admitted that it does not even own these assets and may have even sold these assets to Eagle Coach Manufacturing Company (Ex. B, p.51, Ln.4 to 20). Maplex does not know whether or not these assets were sold to Eagle before or after Eagle moved onto the

premises. ( Ex B p 51 line 4 to 20). Maplex may not therefore as a matter of law establish that it suffered any detriment by virtue of this purchase since any business losses sustained would obviously belong to Eagle and not to Maplex.

### 15) PLAINTIFF MAPLEX MAY NOT AS A MATTER OF LAW SUE BROWNSVILLE FOR INTENTIONAL TORT

The Plaintiff Maplex has also brought suit against the City of Brownsville for intentional torts. The plaintiff has claimed that Brownsville employees committed various intentional torts; fraudulent inducement to contract, fraud, fraudulent inducement, libel, slander and business disparagement. Defendant would first show that Brownsville has governmental immunity which is not waived by the Texas Tort Claims Act for intentional torts. Tex. Civ. Prac. and Rem Code § 101.0215. Governmental units are not liable for the intentional torts of their employees. *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.--Houston [1st Dist] 1995, no writ) and *Jones v. Houston Independent School Dist.*, 979 F.2d 1004 (5th Cir.1992)  This Court denied this defendants first Motion to Dismiss on the grounds that Brownsville may be liable for intentional torts committed pursuant to an exercise of proprietary function. However most of the functions which Brownsville employees were engaged in at the time of plaintiffs complaint were governmental and not proprietary functions. The operation of an airport where the premises is located is a governmental and not a proprietary function by definition. Tex. Civ. Prac. And Rem Code § 101.0215. Plaintiff complains that Brownsville discriminately enforced zoning laws. However building code and inspection, zoning, planning and plat approval and enforcement of land use restrictions are all governmental functions. Tex. Civ. Prac. And Rem Code §101.0211(28)(29)(36). Plaintiff complains of the conduct of Brownsville police in entering and seizing equipment properly

13

described on a warrant. However, police functions are undoubtedly governmental and not proprietary. Tex Civ. Prac and Rem Code §101.0214(1).

16) **MAPLEX'S CONTRACT OF JULY 28, 1999, WAS CLEAR AND UNAMBIGUOUS AND MAPLEX MAY NOT OFFER EXTENSIVE EVIDENCE TO CONTRADICT ITS TERMS.**

Maplex alleges that it was fraudulently induced to enter into that contract and that there were other terms or representations which were not part of that contract. However, a reading of the letter agreement shows that it is clear and unambiguous contract (Ex A). The interpretation of an unambiguous contract is a question of law which this Honorable Court should review without reference to extrinsic evidence or terms. *Clardy Mfg. Co. v. Marine Midland Business Loans Inc.*, 88 F.3d 3457, 352 (C.A.5 (Tex.) 1996) *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir.1992) Maplex is attempting to offer extrinsic evidence to contradict the express written terms of an unambiguous contract which is not permitted under the rules of construction used in this circuit.

17) **THE SUMMARY JUDGMENT EVIDENCE ESTABLISHES THAT BROWNSVILLE MADE NO REPRESENTATION WHICH MAPLEX RELIED ON ITS DETRIMENT**

Furthermore, the summary judgement evidence does not support Maplex claim that there were fraudulent representations which induced Maplex to purchase assets at a bankruptcy sale. Maplex representative Julio Garcia testified that he was unsure who approached who in regard to purchase of the assets of a bankrupt corporation also called Eagle . ( Ex. B p 34, line 9 to p 35 line 8). Julio Garcia's only information regarding Brownsville's representations appear to be through heresay statements made by Dr. Jose Garay, one of his business partners who is now deceased. ( Ex.

14

B p 41 line 20 to 24). Garcia testified that of all the meetings between Dr. Jose Garay and the City regarding the manufacture of buses, that he only attended one personally. ( Ex. B ) Garcia testified in regard to his recollection of that meeting that the City "wanted the company to reestablish over here " ( Ex B p 55 line 1 to 4). Garcia testified that he wanted information relating to the payment of taxes and renting of the warehouse in regard to further commitment from them . ( Ex B p 55 line 5 to 17). Garcia testified that Brownsville promised a 6 month break on the rent and " we were hoping— and they also indicated they were going to have incremental increases in rent later on" ( Ex B p 56 line 13 to line 17). Garcia testified that he did not understand everything being said because the conversation was being conducted in English. ( Ex. B p1 57 line 8 to 15) Garcia admits that he does not speak English now and did not speak it then. ( Ex. B p 57 line 17 to 18). However, the evidence is also clear that Maplex claims it did not sign the Agreement with Brownsville because Julio Garcia at the time lacked the capacity to contract for Maplex. ( Ex. A). Maplex representative Garcia made it very clear at the deposition that at the time he signed the contract he was not only not the president or director but was not even an employee and lacked any authority to bind Maplex whatsoever. Maplex may again take this position but is estopped from claiming damages arising from its execution of that agreement. This is particularly the case since Eagle, and not Maplex is claimed to have been the corporation conducting operations on Brownsville's premises.

    Maplex admits that he was never able to come to any subsequent agreement with Brownsville regarding lease of the premises. Obviously, even assuming for the sake of argument Garcia's representations were correct, the perks allegedly promised by Brownsville had to have been conditional on the execution of a commercial lease between Brownsville and Maplex. Garcia admits that after the letter agreement of July 28, 1998, that he was never able to come to any agreement with Brownsville regarding the rent (Ex. B, p.89, Ln. 13 to Ln. 20). Maplex allegations

15

are essentially that they are suing because they were denied promised perks or benefits arising from a lease they deny ever signing. Maplex is also suing because they, (or more properly Eagle Coach Motor Corporation) was unable to negotiate a long term lease of the Brownsville facility.

Wherefore, Defendant, City of Brownsville respectfully requests that this Honorable Court grant this motion for summary judgement and render judgement in favor of Brownsville and against Maplex SA de Cv. Defendant also prays that this court grant Brownsville its attorney fees as prevailing party and monetary sanctions as deemed appropriate by this Honorable Court. Defendant also prays for all other and further relief to which it is justly entitled.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone:   (956) 541-1846
Facsimile:   (956) 541-1893

By: _____
Mark Sossi
State Bar No. 18855680
USDC No. 10231

16

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing **Motion for Summary Judgment and for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Sanactions** has on this the 14th day of September, 2001, been forwarded to the following by certified mail and fax:

Mr. Jose R. Lopez, II
Mr. J. Homer Garza
The Garza Law Firm, P.C.
1111 North Loop West, Suite 927
Houston, Texas 77008-4716

Mr. Dalby Fleming
Law Offices of Davidson & Troilo
7550 West IH 10, Suite 800
San Antonio, Texas 78229-5815

_____
Mark Sossi

17

CAUSE NO. 99-05-2468-D

| | | |
|---|---|---|
| CITY OF BROWNSVILLE | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| MAPLEX, S.A. De C.V. AND | § | |
| EAGLE MOTOR COACH CORP. | § | 103rd JUDICIAL DISTRICT |

**ORDER SETTING HEARING ON DEFENDANT CITY OF BROWNSVILLE'S MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY FEES PURSUANT TO 42 U.S.C. § 1988 AND FOR SANCTIONS**

On this the _____ day of _____, 2000, came on to be considered Defendant City of Brownsville's Motion for Summary Judgment and for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Sanctions in the above styled and numbered cause of action. The Court having considered same is of the opinion that a hearing should be held thereon.

IT IS, THEREFORE, ORDERED that a hearing on said Motion is hereby set for the _____ day of _____, 2001, at _____ o'clock, _____.m.

SIGNED this _____ day of _____, 2001.

_____
JUDGE PRESIDING

CAUSE NO. 99-05-2468-D

| | | |
|---|---|---|
| CITY OF BROWNSVILLE | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| | § | |
| MAPLEX, S.A. De C.V. AND | § | |
| EAGLE MOTOR COACH CORP. | § | 103rd JUDICIAL DISTRICT |

**ORDER GRANTING DEFENDANT CITY OF BROWNSVILLE'S MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY FEES PURSUANT TO 42 U.S.C. § 1988 AND FOR SANCTIONS**

On the ____ day of _____, 2001, came on before the Court Defendant City of Brownsville's Motion for Summary Judgment and for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Sanctions.

After hearing arguments of counsel and reviewing the evidence before the Court, the Court is of the opinion that Defendant City of Brownsville's Motion for Summary Judgment and for and for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Sanctions should be GRANTED.

IT IS THEREFORE ORDERED, that judgment is rendered in favor of Brownsville and against Maplex SA de CV.

IT IS FURTHER ORDERED, that costs of court are assessed against Maplex, S.A. DE C.V.

IT IS FURTHER ORDERED, that Brownsville's Motion for Sanctions is GRANTED and Maplex. S.A. DE C.V. is hereby ORDERED to pay Sanctions reasonable and necessary attorney fees in the amount of _____. All relief not granted is denied.

Signed this _____ day of _____, 2001.

19